Filed 5/1/14  P. v. Mendoza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038547 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. Nos. SS110095A, SS120395A) |
| v. | |
| ROBERT FRANCISCO MENDOZA, | |
| Defendant and Appellant. | |

A jury convicted Robert Mendoza (appellant) of 11 counts of committing a lewd or lascivious act on a child under 14 years of age (Pen. Code, § 288, subd. (a)).  Counts one through five involved victim Jane Doe I, counts six through eight involved victim Jane Doe II and counts nine through 11 involved victim Jane Doe III.[1]

As to count four, the jury found that appellant engaged in substantial sexual conduct with the victim.  (Pen. Code, § 1203.066, subd. (a)(8).)  As to counts five through nine, the jury found that appellant committed the offenses against more than one victim.

On July 10, 2012, the court sentenced appellant to the indeterminate term of 45 years to life (Pen. Code, §667.61), plus a determinate term of 18 years in state prison.

---

[1] We refer to the victims in this case as Jane Does to protect their anonymity.  For ease of reading, however, we will refer to the victims as Jane I, Jane II and Jane III.

Appellant filed a timely notice of appeal.

On appeal, appellant argues that CALCRIM No. 1110, which was given in this case, unconstitutionally negated the need for the jury to find all elements of Penal Code section 288, subdivision (a) beyond a reasonable doubt. Further, he contends that the court erred by failing to instruct the jury that the investigating officer's testimony could not be used to determine whether the molestation claims were true; alternatively, if this court were to find that the court did not have a sua sponte duty to instruct the jury that it could only use the officer's testimony for a limited purpose, trial counsel provided ineffective assistance. Finally, as to counts six through 11, appellant asserts that the cumulative effect of the trial court errors violated his due process rights. For reasons that follow, we affirm the judgment.

*Testimony Adduced at Trial*

*Counts Six, Seven and Eight—Victim Jane II*

Jane II's mother testified that her daughter was born in April 1998. The family lived in Seaside from the beginning of 2009 until June 2010. Jane II took Tae Kwon Do lessons at Seaside Martial Arts studio; appellant was Jane II's instructor. After the family moved out of state, Jane II asked her mother how she would know if she had been sexually molested; Jane II was visibly upset at the time. Jane II told her mother that while she was in her martial arts class, appellant had touched her. While telling her mother this, Jane II was "shaking, and she started crying."

Jane II testified that she was 14 years old at the time of the trial. When she lived in Seaside she was in fifth grade; she took Tae Kwon Do lessons for seven or eight months. At times, appellant would assist her with her stretching exercises. Using a diagram, Jane II indicated that appellant touched her vagina and her breasts over her clothes with his hands while he was helping her stretch. Jane II described the touches as a "petting" motion. She said the first two touches occurred one week apart and that appellant touched her chest on more than one occasion. Jane II estimated that appellant

2

touched her vagina more than 10 times. The touches occurred in the studio next to a pillar while other people were in the studio. Jane II testified that while she was being touched she tried to make eye contact with other people that were in the studio, but no one was watching her. She admitted that some of the touches occurred while her mother was present in the studio. Jane II said she was afraid to tell her mother what was happening while the family lived in Seaside.

*Counts Nine, 10 and 11—Victim Jane III*

Jane III's mother testified that her daughter was born in January 2003. In 2007 and 2008, appellant and his wife lived with her and her family; appellant and his wife moved out of her house in March 2008. Jane III's mother testified that she was a nurse and worked a night shift. Appellant and his wife looked after Jane III and Jane III's brother while she was at work. The children complained to her about appellant and his wife being present in the home for a few months before appellant and his wife left.

Jane III, who was nine years old at the time of trial and in the third grade, testified that she took Tae Kwon Do lessons from appellant; she called him "master." Appellant moved in with her family. She told the jury that appellant gave her "bad touches." Jane III used a diagram to show where appellant touched her.[2] She said that appellant touched her over her clothing; she said appellant's finger "slid" over her body. Jane III said that appellant made her touch his "private part," which was "hairy"; she touched it "a few times." These touches occurred inside appellant's bedroom; the door was locked so at times Jane III was unable to get away from appellant. Jane III described how appellant "played with himself" in front of her; he would "pull" his private parts with his hands while his pants were down. Jane III testified that she told her counselors about the touches. Jane III explained that she had not told her mother about the touching because "the story was sad" and she was scared. Also, appellant had told her not to tell anyone.

---

[2] Jane III did not describe what area she had circled. However, the verdict form for count nine indicates that the lewd act involved appellant touching Jane III's vagina.

3

*Counts One, Two, Three, Four, and Five—Victim Jane I*

Jane I's father testified that his daughter was born in September 1996. In 2009, Jane I took Tae Kwon Do classes from appellant. Jane I took classes for four years. In January 2011, Jane I told him that appellant had touched her inappropriately.

At the time of trial, Jane I said that she was 15 years old. She testified she had attended Tae Kwon Do classes five or six times a week. In April 2009, appellant began commenting on her body as it was developing. One day, while she was in the bathroom checking her weight, appellant closed the bathroom door and grabbed her; he kissed her on the lips. She managed to open the bathroom door and run out; she began crying. The next day, appellant forced her to kiss him on the lips after again closing the bathroom door.

Jane I said that in November 2009, she was in appellant's office when he unzipped her jacket and pulled her shirt and bra down. Appellant fondled her breasts and kissed them. Appellant put his hands down her pants, under her underwear and touched her vagina. Appellant's fingers entered her vagina. Appellant tried to spread her legs when she closed them; she ran out of the office.

Jane I testified that between April and November 2009, appellant touched her vagina over her clothes numerous times. The touches would occur while she was stretching her legs; appellant would push on her vagina. Jane I estimated that appellant touched her vagina while she was stretching on more than 15 occasions. Jane I said that appellant had told her to not tell anyone about the touches. Jane I testified that appellant had said that he had nicknamed her bubbles because of her body. Jane I explained that she was scared to report what was happening; appellant had told her that the studio would close down if she ever reported what was happening and it would be her fault. Jane I said that she had made a pretext telephone call to appellant while a Detective Meroney was present.

4

Seaside Police Detective Jackie Meroney testified that she had investigated approximately 35 child sexual abuse cases in her career. She had conducted approximately 18 interviews of child sexual abuse suspects and approximately 30 interviews of child sexual abuse victims. In her experience, it is common for victims to delay reporting. Often, the child victims cite fear as a cause for any delay in reporting; fear of not being believed, fear of disappointing their families or fear because of threats made by the perpetrator. Sometimes, the child victims initially provide few details out of fear, and may return to reside with their abuser following the abuse. In her experience, Detective Meroney found that the abuser was a family member or a close family friend with access to the victim. In some cases the abuser used videos, books, or magazines to groom the child victim into committing sexual touches.

Detective Meroney testified that appellant's studio was at the 700 block of Broadway Avenue in Seaside. She identified photographs depicting the front and interior of the studio. On January 13, 2011, she took Jane I's report and recorded a pretext telephone call that Jane I made to appellant. Detective Meroney identified the recording of the pretext telephone call and it was played for the jury.[3]

Detective Gabe Anderson testified that he interviewed appellant on January 13, 2011, following his arrest in this case. Detective Anderson identified the recording of the interview and it was played for the jury.[4]

*Defense Case*

Defense counsel called several witnesses who had trained with appellant at his Tae Kwon Do studio in an attempt to portray Jane I as being an untruthful person. All these witnesses testified that they had never seen appellant touch anyone inappropriately during

---

[3]     We granted appellate counsel's request to augment the record with a copy of the transcript of the telephone call that was played for the jury.

[4]     Again, we granted appellate counsel's request to augment the record with a copy of the transcript of the interview.

stretching exercises; some said that they knew Jane I to be untruthful.

Appellant's wife testified that when they lived with Jane III and her family, she looked after the children while Jane III's mother was at work. By the time she and appellant got to the house, the children were in their room sleeping. Appellant never left the bedroom where she and appellant slept and returned to the bedroom with Jane III; the only time he left was to go to the bathroom. Appellant was not alone with the children in the afternoon and he behaved normally around Jane III.

Appellant testified in his own defense. He said that he arrived in the United States in 2002 to work as a Tae Kwon Do instructor. Appellant explained that Jane I had emotional problems and was rebellious about maintaining a fighting weight. One time after successfully weighing in, Jane I came over to him and kissed him on the mouth. He said that it was the only time they kissed. Appellant admitted that in November 2009, while he was discussing with Jane I her readiness to compete, Jane I seemed affectionate so he grabbed her by the shoulders and kissed her on the lips and "maybe her breasts." Appellant said that he put his hand "inside of her pants." Jane I closed her legs when his hand got close to Jane I's vagina. Appellant said that he removed his hand and apologized. Jane I appeared surprised, but not "bothered or worried." Appellant admitted knowing that Jane I was 13 years old at the time he kissed her mouth and breasts. He testified he believed Jane I wanted attention at the time he kissed her.

Appellant admitted helping Jane II with her stretching exercises, but denied putting his hand in the area of her vagina while helping her stretch. Further, he denied ever telling Jane III to touch his body. Appellant said that he touched Jane III's shoulders, hands, and head to get her attention.

The parties stipulated that appellant was born on June 25, 1973.

*Discussion*

*CALCRIM No. 1110*

The court instructed the jury pursuant to CALCRIM No. 1110 as follows:

6

"The defendant is charged with 11 separate counts of committing a lewd act on a child under the age of 14 years in violation of Penal Code Section 288, Subdivision 'A.' [¶] To prove that the defendant is guilty of this crime, the People must prove that, first, the defendant willfully touched any part of a child's body either on the bare skin or through the clothing. Or the defendant willfully caused a child to touch her own body or the defendant's body either on the bare skin or through the clothing. [¶] Second, the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child. [¶] And third, the child was under the age 14 years at the time of the act. [¶] *The touching need not be done in a lewd or sexual manner.* [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] Actually, arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required." (Italics added.)[5]

In essence, appellant contends the inclusion of the phrase "[t]he touching need not be done in a lewd or sexual manner" in CALCRIM No. 1110 directly conflicts with the express statutory language defining the nature of the crime of lewd act upon a child (Pen. Code, § 288, subd. (a)), and negates an essential element of the crime.[6]

Penal Code section 288, subdivision (a), provides: "[A]ny person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting

---

[5] The language reflects the form of the instruction in effect at the time of trial in May 2012. (Judicial Counsel of California Criminal Jury Instructions, CALCRIM No. 1110 (February 2012 ed.) p. 928.)

[6] Appellant concedes that challenges to CALCRIM No. 1110 usually fail because the alleged touching is inarguably sexual. Here, however, he asserts the error was not harmless as to counts six, seven and eight because the evidence included incidental non-sexual touching. Jane II admitted that in addition to touching her vagina and breasts, appellant touched other parts of her body, such as her hands, feet and legs while she was practicing kicks and punches.

7

other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Appellant argues that CALCRIM No. 1110 allowed the jury to find he had committed lewd acts on Jane II (counts six, seven and eight) without finding an essential element of the offense—that the touching had been done lewdly. We disagree. CALCRIM No. 1110, as presented to the jury below, correctly stated the law regarding the crime of lewd act upon a child.

The language of CALCRIM No. 1110 comports with the statutory elements of the offense of lewd or lascivious act on a child. In discussing the definition of a "lewd" act under section 288, the Supreme Court has explained the "statute itself declares that to commit such an act 'wilfully and lewdly' means to do so 'with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires' of the persons involved." (*In re Smith* (1972) 7 Cal.3d 362, 365 (*Smith*).) The focus of the offense is on the *intent* of the perpetrator. "[T]he courts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez* ).)

The sentence to which appellant objects correctly states the law and makes it plain to the jury the physical act of touching involved need not be seen as lewd or offensive *in*

8

*and of itself.*  Even a physical touching that may appear innocent, *if done with the requisite statutory intent,* can be found to be a prohibited act under section 288.  "As suggested in [*In re*] *Smith,* we can only conclude that the touching of an underage child is 'lewd or lascivious' and 'lewdly' performed depending entirely upon the sexual motivation and intent with which it is committed." (*Martinez, supra,* 11 Cal.4th at p. 449; accord, *People v. Lopez* (1998) 19 Cal.4th 282, 289 [*any* touching of a child under the age of 14 violates section 288, subdivision (a), even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim]; see also *People v. Sigala* (2011) 191 Cal.App.4th 695, 700–701 [holding same language in CALCRIM No. 1120 to be correct statement of law].)  In short, CALCRIM No. 1110 does not improperly negate a statutory element of section 288.

Appellant's reliance on *People v. Cuellar* (2012) 208 Cal.App.4th 1067 is unavailing.  *Cuellar* concerned the identical language in CALCRIM No. 1120.  The court in *Cuellar* did not conclude the instruction was infirm, constitutionally or otherwise.  *Cuellar* stated the language is "possibly confusing" (*Cuellar,* at p. 1071), but, reading the instructions as a whole and given the overwhelming evidence against the defendant, the language did not mislead the jury.  (*Id.* at p. 1072.)  Subsequent to *Cuellar,* and effective February 26, 2013, the Advisory Committee on Criminal Jury Instructions deleted the sentence from the form jury instructions for both CALCRIM No. 1110 and No. 1120.  (Judicial Counsel of California Criminal Jury Instructions, CALCRIM Nos. 1110 and 1120 (February 2013 ed.) pp. 831, 842).)[7]

---

[7]     The instruction in *Cuellar* stated in part:  "Lewd or lascivious conduct is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. The touching need not be done in a lewd or sexual manner." (*Cuellar*, *supra*, 208 Cal.App.4th at p. 1070, italics omitted.)  The defendant argued "the second sentence is inconsistent with the first and negates the requirement that the touching be done in a lewd or lascivious manner." (*Id.* at p. 1071.)  *Cuellar* agreed the sentence, "[t]aken by itself," was capable of the defendant's interpretation and "[a]t best, it is

9

Nevertheless, the revision to CALCRIM No. 1110 does not alter our assessment of the validity of CALCRIM No. 1110 as given in this case. There has been no change in the well-established law that a violation of section 288 does not require an explicitly sexual or inherently lewd touching.

Appellant recognizes that *Cuellar*, *supra*, 208 Cal.App.4th 1067 is at odds with *People v. Sigala*, *supra*, 191 Cal.App.4th 695 (*Sigala*), which held, in a prosecution under Penal Code section 288.5, subdivision (a) (continuous sexual abuse of a child under 14), only the intent must be lewd and lascivious, not the touching itself. (*Id*. at p. 700.) Nevertheless, he argues that the analysis in *Sigala* suffers from a fatal problem because it relied on *People v. Lopez, supra,* 19 Cal.4th 282 and *People v. Martinez*, *supra*, 11 Cal.4th 434, both of which were decided before CALCRIM No. 1110 was created; and they parsed a CALJIC instruction that did not contain the language challenged here. We are not persuaded.

The fact that CALCRIM No. 1110 was not created at the time *Lopez* and *Martinez* were decided is irrelevant. The crux of appellant's argument is that there needs to be a lewd touching, that is the act itself must be inherently lewd; *Martinez* specifically rejected the argument section 288 is violated only if a defendant touches a child in an inherently lewd manner. (*People v. Martinez, supra,* 11 Cal.4th at p. 442.)

We reject appellant's argument that the evidence as to counts six, seven and eight involving Jane II was ambiguous in terms of the sexual or lewd nature of the contact. Jane II testified that appellant touched her vagina and breasts. In our view, this behavior was explicitly sexual; we have no doubt the jury found the behavior was explicitly

---

unfortunate and possibly confusing," faulting *Sigala* 's analysis as failing to "focus on just what information the second sentence is designed to impart that is not already stated in the first sentence." (*Ibid.*) It urged revising the instruction to make "the two sentences . . . complement each other" and remove "any arguable inconsistency." (*Id.* at p. 1072.) Arguably, *Cuellar* 's critique of *Sigala* is inapplicable because the instruction in this case does not contain the first sentence found in those cases.

10

sexual.

In sum, CALCRIM No. 1110 as given in this case correctly stated the law and did not remove an element of the offense from the jury's consideration.

*Alleged Instructional Error Regarding Detective Meroney's Testimony*

Appellant argues that the court erred by failing to instruct the jury that Detective Meroney's testimony could not be used to determine whether the molestation claims were true. He asserts that Detective Meroney presented Child Sexual Abuse Accommodation Syndrome (CSAAS) evidence.

We note that the trial court did not qualify Detective Meroney as an expert witness on CSAAS or as an expert witness on anything; and no mention of CSAAS was made during her testimony.[8] However, Detective Meroney was allowed to testify to her experiences investigating more than 35 sexual assault cases during her career as noted *ante*.

On cross-examination, Detective Meroney admitted that in some cases of child sexual abuse she had investigated there was no delayed reporting, and that some victims had reported at the first opportunity. Further, she had observed that some victims refuse to return to the residence of the abuser or have anything else to do with their abuser. Detective Meroney testified that she is obligated to take a child victim's report, but she does not determine credibility. She explained that the fact that a child victim

---

[8]    The prosecutor sought to qualify Detective Meroney as in expert in the investigation of child sexual abuse cases. Defense counsel argued that Detective Meroney was not qualified to give expert testimony. After an Evidence Code section 402 hearing, the court determined that "clearly detective Meroney does have extensive investigative experience, her actual formal training is relatively limited . . . . [¶] [O]n the subject of child sexual assault and some of the psychological aspects about victims and perpetrators, it is still relatively limited to something in the order of 16 to 20 intensive training hours. My concern there is that for an expert designation based on that level of training, we don't want to be conflating law enforcement training with experience with expert experience at this level." Accordingly, the court did not qualify Detective Meroney as an expert.

11

immediately reports or delays a report does not establish their credibility.

Expert testimony concerning CSAAS is used to describe and explain how children commonly react to sexual molestation. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394 (*Bowker*); see also *People v. Patino* (1994) 26 Cal.App.4th 1737, 1742–1743, 1744 (*Patino*).) Common stress reactions of children who have been sexually molested "may include the child's failure to report, or delay in reporting, the abuse." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*).) A sexually molested child may also react by recanting his or her story in whole or in part. (*Bowker, supra,* 203 Cal.App.3d at p. 394.)

"[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*McAlpin, supra,* 53 Cal.3d at p. 1300; see also *Patino, supra,* 26 Cal.App.4th at p. 1744 [although inadmissible to prove that a molestation occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation].)

Thus, expert CSAAS testimony "is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*Bowker, supra,* 203 Cal.App.3d at p. 394.)

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case (*People v. Blair* (2005) 36 Cal.4th 686, 744), that is, " ' " 'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' " ' " (*People v. Valdez* (2004) 32 Cal.4th 73, 115.)

In general, a trial court has no duty to give the jury a limiting instruction on the admissibility of evidence in the absence of a request by the parties. (Evid. Code, § 355;

12

*People v. Dennis* (1998) 17 Cal.4th 468, 533.)  However, with respect to CSAAS evidence, *People v. Housley* (1992) 6 Cal.App.4th 947 (*Housley*) held that "it is appropriate to impose upon the courts a duty to render a sua sponte instruction limiting the use of such evidence.  Accordingly, in all cases in which an expert is called to testify regarding CSAAS we hold the jury must sua sponte be instructed that (1) such evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested; and (2) the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*Id.* at p. 959.)  There are older Court of Appeal decisions that disagree with this principle.  (See, e.g., *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735 [instruction required only upon request]; *People v. Bothuel* (1988) 205 Cal.App.3d 581, 587–588 [same], overruled on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 348.)

The purpose of the limiting instruction is to avoid misuse of CSAAS testimony and the expert inadvertently corroborating the victim's claim "because the expert commonly is asked to offer an opinion on whether the victim's behavior was typical of abuse victims, an issue closely related to the ultimate question of whether abuse actually occurred." (*Housley, supra,* 6 Cal.App.4th at p. 958.)  Here, Detective Meroney was not asked any such question, but she did offer testimony on her experiences in investigating child sexual abuse cases that could be construed as showing the victims' reactions as demonstrated by the evidence were typical of abuse victims.

Implicitly, appellant's argument raises two issues, which would require further analysis to resolve: (1) whether the rules about the admissibility of CSAAS evidence apply to expert testimony that does not specifically refer to CSAAS, but instead, generally describes the behavior of children who have been sexually abused; and (2) whether a trial court has a sua sponte duty to provide a limiting instruction regarding CSAAS evidence, or, in contrast, whether an instruction must be requested by defense

counsel. We need not undertake such an analysis in this case. Even if the trial court had been required to give a sua sponte limiting instruction, it is not reasonably probable that appellant would have received a more favorable result had the instruction been given.

Simply put, we will assume for the sake of argument that the court had a sua sponte obligation to instruct the jury how to consider Detective Meroney's testimony. Any assumed error in not giving the CSAAS limiting instruction sua sponte was harmless. In analyzing claims of instructional error, we apply the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (See *People v. Flood* (1998) 18 Cal.4th 470, 490 [applying *Watson* standard in determining whether instruction removed an element of the crime from the jury's consideration].) Under *Watson,* reversal is warranted only on a determination that it is reasonably probable that defendant would have obtained a more favorable result in the absence of any error. (*Watson, supra,* 46 Cal.2d at p. 836.) Instructional error such as that claimed here is "trial error whose prejudicial effect may be assessed in light of the entire record." (*People v. Flood, supra,* 18 Cal.4th at p. 503.)

First, we note that the court instructed the jury "[y]ou alone must judge the credibility or believability of the witnesses." Any risk that Detective Meroney's testimony would be mistaken by the jury as support for the victim's credibility was eliminated by her testimony that she is obligated to take a child victim's report, but she does not determine credibility and that the fact a child victim immediately reports or delays a report does not establish their credibility—in other words these things could not be used to corroborate the victims' claims. In light of these comments, the jury would not reasonably have understood Detective Meroney's testimony as being offered for the purpose of corroborating the victims' claims of molestation.

Furthermore, this case did not turn on delayed reporting, but rather on whether what Jane II and Jane III said happened was possible in light of the public nature of the molestation to Jane II; and as to Jane III the fact that the molestation was alleged to have

14

occurred in the bedroom that appellant shared with his wife, during a time when it was highly probable his wife was present in the room.

Appellate review under *Watson* "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) "In making that evaluation, an appellate court may consider among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Ibid*.) After an examination of the entire case, including the evidence, we conclude there is not a reasonable probability that a result more favorable to appellant would have been reached had the cautionary instruction regarding Detective Meroney's testimony been given. (*People v. Watson, supra,* 46 Cal.2d 818, 835-836; *People v. Housley, supra,* 6 Cal.App.4th at p. 959.) Jane II and Jane III each provided detailed testimony regarding various molestations perpetrated on them by appellant. Contrary to appellant's assertions, nothing in Jane II's and Jane III's testimony was inherently improbable.

Having determined this error was harmless, we need not address appellant's contention that his counsel provided ineffective assistance by failing to request a limiting instruction, since appellant cannot show he was prejudiced by counsel's error. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217, [defendant must establish prejudice to obtain relief on an ineffective assistance claim].)

*Cumulative Error*

With respect to counts six through 11, appellant argues that the cumulative effect of the trial court's errors violated his due process rights.

Certainly, " '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'

[Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) The combined effects of multiple errors may indeed render a trial fundamentally unfair. (See *People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.) However, as discussed *ante*, since we have found none of appellant's claims of error meritorious and/or prejudicial, a cumulative error argument cannot be sustained. No serious errors occurred, which whether viewed individually or in combination, could possibly have affected the jury's verdict. (*People v. Martinez* (2003) 31 Cal.4th 673, 704; *People v. Valdez, supra,* 32 Cal.4th at p. 128.) To put it another way, since we have found no substantial error in any respect, appellant's claim of cumulative prejudicial error must be rejected. (*People v. Butler* (2009) 46 Cal.4th 847, 885.) Appellant was entitled to a fair trial, not a perfect one. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057.)

*Disposition*

The judgment is affirmed.


_____

ELIA, J.

WE CONCUR:



_____

RUSHING, P. J.




_____

PREMO, J.


16